'O'

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ANTONIO FERNANDEZ,

        Plaintiff,

    v.

ORANGE WALKER, LLC, a
California Limited
Liability Company; and
JASON YONG JAE KWOK,

        Defendants.

CV 21-1061-RSWL-Ex

**ORDER re: Plaintiff's
Application for Default
Judgment** [19]

    Currently before the Court is Plaintiff Antonio
Fernandez's ("Plaintiff") Application for Default
Judgment (the "Application") [19].  Having reviewed all
papers submitted pertaining to this Application, the
Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **DENIES**
the Application **without prejudice.**

//

//

//

1

1                           I.   BACKGROUND

2    **A.   <u>Factual Background</u>**

3         Plaintiff is paralyzed from the waist down and uses
4    a wheelchair for mobility.  Compl. ¶ 1, ECF No. 1.
5    Orange Walker, LLC ("Defendant Orange Walker") owned and
6    owns the real property located at 14408 Pioneer Blvd.,
7    Norwalk, California 90650 (the "Property").  <u>Id.</u> ¶¶ 2-3.
8    Jason Yong Jae Kwak ("Defendant Yong Jae Kwok") owned
9    and owns Mike's Liquor Jr. Market (the "Business")
10   located on the Property.  <u>Id.</u> ¶¶ 4-5.

11        In January 2021, Plaintiff visited the Business.
12   <u>Id.</u> ¶ 10.  Upon arrival, Plaintiff found that the
13   Property failed to provide wheelchair accessible paths
14   of travel in compliance with ADA standards.  <u>Id.</u> ¶ 12.
15   Specifically, "some of the paths of travel inside the
16   [Business] had widths that were well below 36 inches."
17   <u>Id.</u> ¶ 14.  Plaintiff personally encountered these
18   barriers.  <u>Id.</u> ¶ 17.  Plaintiff intends to return to the
19   Business to test its compliance with disability access
20   laws, but he is currently deterred from doing so because
21   of the existing barriers.  <u>Id.</u> ¶ 22.  Plaintiff asserts
22   that these barriers are "easily removed without much
23   difficulty or expense."  <u>Id.</u> ¶ 21.

24   **B.  <u>Procedural Background</u>**

25        Plaintiff filed his Complaint [1] on February 5,
26   2021, alleging violations of the ADA and Unruh Act.
27   Plaintiff served Defendant Yong Jae Kwak [11] on
28   February 12, 2021, and Defendant Orange Walker [15] on

1  March 17, 2021.

2      As of yet, Defendants have not pleaded, answered,

3  or otherwise appeared in this Action.  The Clerk of

4  Court entered default as to Defendant Yong Jae Kwak [14]

5  on March 12, 2021, and as to Defendant Orange Walker

6  [17] on May 4, 2021.  On August 2, 2021, Plaintiff filed

7  the present Application [19].  Plaintiff seeks an order

8  enjoining Defendants to provide premises that comply

9  with the ADA and Unruh Act.  Compl. 7:4-5.  Plaintiff

10 also requests awards of $4,000 in statutory damages

11 against each Defendant and $3,116 in attorneys' fees and

12 costs, for a total award of $11,116.  Id. at 7:8-11;

13 Decl. of Russell Handy in Supp. of Pl.'s App., Invoice,

14 ECF No. 19-3; Proposed Order 2:6, ECF No. 19-12.

15                    **II.   DISCUSSION**

16 **A.   Legal Standard**

17     Federal Rule of Civil Procedure ("Rule") 55(b)

18 authorizes a district court to grant default judgment.

19 Pursuant to Local Rule 55-1, the party moving for

20 default judgment must submit a declaration establishing:

21 (1) when and against which party default was entered;

22 (2) on which pleading default was entered; (3) whether

23 the defaulting party is a minor, incompetent person, or

24 active service member; and (4) proper service.  Upon

25 default, all factual allegations in the complaint,

26 except those relating to damages, are assumed to be

27 true.  TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915,

28 917-18 (9th Cir. 1987) (quoting Geddes v. United Fin.

1  Grp., 559 F.2d 557, 560 (9th Cir. 1977)).

2      In exercising its discretion to grant default

3  judgment, the court must consider the following

4  factors: (1) possibility of prejudice to the plaintiff,

5  (2) merits of the substantive claim, (3) sufficiency of

6  the complaint, (4) sum of money at stake in the action,

7  (5) possibility of disputes regarding material facts,

8  (6) whether excusable neglect caused the default, and

9  (7) the strong policy underlying the Federal Rules of

10  Civil Procedure favoring decisions on the merits.

11  NewGen, LLC v. Safe Cig, LLC, 840 F.3d 606, 616 (9th

12  Cir. 2016) (quoting Eitel v. McCool, 782 F.2d 1470,

13  1471-72 (9th Cir. 1986)).  Additionally, if the

14  defaulting party failed to plead or otherwise defend,

15  the court must determine that it has subject matter and

16  personal jurisdiction.  In re Tuli, 172 F.3d 707, 712

17  (9th Cir. 1999).  When default judgment is granted, the

18  relief awarded "must not differ in kind from, or exceed

19  in amount, what is demanded in the pleadings."  Fed. R.

20  Civ. P. 54(c).

21  **B.  Discussion**

22      1.  Jurisdiction

23          a.  ADA Claim

24      The Court has subject matter jurisdiction over

25  violations of the ADA pursuant to 28 U.S.C. §§ 1331 and

26  1343.  See Civil Rights Educ. & Enf't Ctr. v. Hosp.

27  Props. Tr., 867 F.3d 1093, 1098 (9th Cir. 2017).

28  Moreover, the Court has personal jurisdiction over

4

1   Defendants because they have "certain minimum contacts"
2   with California such that "the suit does not offend
3   'traditional notions of fair play and substantial
4   justice.'"  Calder v. Jones, 465 U.S. 783, 788 (1984)
5   (citation omitted).  Specifically, Defendants owned and
6   own the Property and the Business located at 14408
7   Pioneer Blvd., Norwalk, California 90650.  Compl. ¶¶ 2-
8   5.
9           b.  Unruh Act Claim
10       The Court has supplemental jurisdiction over
11   "claims that are so related to claims in the action
12   within such original jurisdiction that they form part of
13   the same case or controversy under Article III of the
14   United States Constitution."  28 U.S.C § 1367(a).  Even
15   if supplemental jurisdiction exists, however, district
16   courts have discretion to decline supplemental
17   jurisdiction "in exceptional circumstances" or where
18   "there are other compelling reasons for declining
19   jurisdiction."  28 U.S.C. § 1367(c)(4).  The Supreme
20   Court has described 28 U.S.C. § 1367(c) as a
21   codification of the principles of "economy, convenience,
22   fairness, and comity" that underscore the Supreme
23   Court's earlier jurisprudence concerning pendent
24   jurisdiction.  City of Chicago v. Int'l Coll. of
25   Surgeons, 522 U.S. 156, 172-73 (1997) (quoting Carnegie-
26   Mellon Univ. v. Cohill, 484 U.S. 343, 357 (1988).
27       The Ninth Circuit does not require an "explanation
28   for a district court's reasons [for declining

supplemental jurisdiction] when the district court acts under" 28 U.S.C. §§ 1367(c)(1)-(3).  San Pedro Hotel Co. v. City of Los Angeles, 159 F.3d 470, 478 (9th Cir. 1998).  It does, however, require a district court to "articulate why the circumstances of the case are exceptional in addition to inquiring whether the balance of the Gibbs values provide compelling reasons for declining jurisdiction in such circumstances." Exec. Software N. Am. Inc. v. U.S. Dist. Court for the Cent. Dist. of Cal., 24 F.3d 1545, 1558 (9th Cir. 1994). According to the Ninth Circuit, this "inquiry is not particularly burdensome." Id.

California's Unruh Civil Rights Act provides: "[a]ll persons within the jurisdiction of [California] are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51. Pursuant to Civil Code § 51(f), a violation of the ADA is a per se violation of the Unruh Act. But unlike the ADA, the Unruh Act provides for recovery of monetary damages. A plaintiff may recover actual damages for each offense "up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000)." Id. § 52(a). "The litigant need not prove she suffered actual damages to recover the independent statutory damages of $4,000." Molski v. M.J. Cable,

1   Inc., 481 F.3d 724, 731 (9th Cir. 2007) (citing Botosan

2   v. Paul McNally Realty, 216 F.3d 827, 835 (9th Cir.

3   2000)).

4        "In 2012, in an attempt to deter baseless claims

5   and vexatious litigation, California adopted heightened

6   pleading requirements for disability discrimination

7   lawsuits under the Unruh Act."  Velez v. Il Fornaio

8   (Am.) Corp., No. 3:18-CV-1840-CAB-MDD, 2018 WL 6446169,

9   at *6 (S.D. Cal. Dec. 10, 2018).  These heightened

10  pleading requirements apply to actions alleging a

11  "construction-related accessibility claim," which

12  California law defines as "any civil claim in a civil

13  action with respect to a place of public accommodation,

14  including but not limited to, a claim brought under

15  Section 51, 54, 54.1, or 55, based wholly or in part on

16  an alleged violation of any construction-related

17  accessibility standard."  Cal. Civ. Code § 55.52(a)(1).

18  California's heightened pleading standard requires a

19  plaintiff to include specific facts concerning the

20  plaintiff's claim, including the specific barriers

21  encountered and how the plaintiff was deterred on each

22  occasion.  See Cal. Civ. Code § 425.50(a).  California

23  law also requires that complaints for construction-

24  related accessibility claims be verified; if they are

25  not, they are subject to a motion to strike.  See id.

26  § 425.50(b)(1).

27       When California continued to experience large

28  numbers of these actions, California imposed additional

limitations on "high-frequency litigants."[1]  These additional restrictions became effective on October 15, 2015.  In support of its imposition of additional requirements on high-frequency litigants, the California Legislature found and declared:

> According to information from the California Commission on Disability Access, more than one-half, or 54 percent, of all construction-related accessibility complaints filed between 2012 and 2014 were filed by two law firms. Forty-six percent of all complaints were filed by a total of 14 parties.  Therefore, a very small number of plaintiffs have filed a disproportionately large number of the construction-related accessibility claims in the state, from 70 to 300 lawsuits each year. Moreover, these lawsuits are frequently filed against small businesses on the basis of boilerplate complaints, apparently seeking quick cash settlements rather than correction of the accessibility violation.  This practice unfairly taints the reputation of other innocent disabled consumers who are merely trying to go about their daily lives accessing public accommodations as they are entitled to have full and equal access under the state's Unruh Civil Rights Act (Section 51 of the Civil Code) and the federal Americans with Disability Act of 1990 (Public Law 101-336).

Id. § 425.55(a)(2).  In response to the "special and unique circumstances" surrounding disability access

---

[1] A high-frequency litigant is defined in part as a plaintiff who has filed ten or more complaints alleging a construction-related accessibility violation within the twelve-month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation.  Cal. Civ. Proc. Code § 425.55(b)(1).

1  ligation, id. § 425.55(3), California imposed a "high-
2  frequency litigant fee," requiring high-frequency
3  litigants to pay a $1,000 filing fee in addition to the
4  normal fee at the time of filing a complaint.  Cal.
5  Gov't Code § 70616.5.

6      In enacting restrictions and additional fees for
7  the filing of construction-related accessibility claims,
8  California sought to limit the burden these types of
9  cases put on its businesses.  But, in filing these
10  Actions in federal courts, plaintiffs have managed to
11  avail themselves of the state-law-provided statutory
12  damages all while circumventing California's limitations
13  on obtaining such awards.  This situation, as well as
14  the increased burden on federal courts due to the
15  increasing number of these cases, presents the type of
16  "exceptional circumstances" and "compelling reasons"
17  that justify a court's discretion to decline to exercise
18  supplemental jurisdiction over any Unruh Act or other
19  state law claims under 28 U.S.C. § 1367(c)(4).

20      Further, declining to exercise supplemental
21  jurisdiction over Plaintiff's Unruh Act claim under
22  these circumstances furthers the values of judicial
23  economy, fairness, convenience, and comity:

24          As a high-frequency litigant, the Court finds
25      it would be improper to allow Plaintiff to use
        federal court as an end-around to California's
26      pleading requirements.  Therefore, as a matter
27      of comity, and in deference to California's
        substantial interest in discouraging unverified
28      disability discrimination claims, the Court

1  declines supplemental jurisdiction over
   Plaintiff's Unruh Act claim.

2

3  Schutza v. Cuddeback, 262 F. Supp. 3d 1025, 1031 (S.D.
4  Cal. 2017); see also Gibbs, 383 U.S. at 726.

5      California's elected representatives, not this
6  Court, have enacted laws restricting construction-
7  related accessibility claims, and in doing so, have
8  directed that these claims be treated differently than
9  other matters.  In recognizing that a small number of
10 lawyers and plaintiffs who have filed thousands of these
11 cases have evaded California's limitations on these
12 claims, the Court has not, as some plaintiffs' counsel
13 have alleged, acted on a "knee-jerk dismissal
14 preference" in declining to exercise supplemental
15 jurisdiction over these claims.

16     Therefore, the Court concludes that "exceptional
17 circumstances" and "compelling reasons" exist to support
18 the Court's decision to **DECLINE** to exercise supplemental
19 jurisdiction over Plaintiff's Unruh Act claim.  In doing
20 so, the Court has not deprived Plaintiff of any
21 remedies, as the ADA claim remains before this Court,
22 and Plaintiff may, if he so chooses, pursue his Unruh
23 Act claim in state court.[2]  Additionally, any resultant

24 ───────────────
       [2] Plaintiff encountered the barrier in January 2021.  As
25 such, the statute of limitations for Plaintiff's Unruh Act claim
   has not lapsed and Plaintiff is able to bring this claim in state
26 court where it can be properly adjudicated.  See Harris v. County
   of San Diego, No. CV 18-924-BTM-AHG, 2019 WL 6683367, at *4 (S.D.
27 Cal. Dec. 5, 2019) (finding that Unruh Act claims "are subject to
   a two-year statute of limitations") (citing Cal. Code Civ. Proc.
28 § 335.1).

1  inefficiencies "are slight in comparison to California's
2  weighty interest in ensuring its laws are not
3  circumvented, and in enforcing the detailed statutory
4  regime it has set up for construction-related
5  accessibility claims." Davidson v. Cole, No. SACV-20-
6  01733-CJC-(ADSx), 2020 WL 6588386, at *4 (C.D. Cal.
7  Sept. 28, 2020).

8      2.  Service of Process

9      The Court next considers whether the procedural
10 requirements for granting default judgment are met in
11 this case.

12     Defendants were properly served under Rule 4.  See
13 Direct Mail Specialists, Inc. v. Eclat Computerized
14 Techs., Inc., 840 F.2d 685, 688 (9th Cir. 1988) ("A
15 federal court does not have jurisdiction over a
16 defendant unless the defendant has been served properly
17 under Fed. R. Civ. P. 4.") (citation omitted).  Service
18 on an individual may be made in accordance with the
19 rules of the state where service will be made.  Fed. R.
20 Civ. P. 4(e)(1).  In California, the summons and
21 complaint may be served by personal delivery.  Cal. Civ.
22 Proc. Code §§ 415.10.  Plaintiff served Defendant Yong
23 Jae Kwak by personal service on February 12, 2021.  See
24 Proof of Service, ECF No. 11.  Thus, Plaintiff properly
25 served Defendant Yong Jae Kwak and provided the
26 necessary proof of service.

27     Service on a corporation may similarly be made in
28 accordance with the rules of the state where service

1   will be made.  Fed. R. Civ. P. 4(h)(1)(A).  California

2   permits a corporation to be served by substituted

3   service if personal service cannot be accomplished with

4   reasonable diligence.  Cal. Civ. Proc. Code § 415.20(b).

5   A copy of the summons and complaint may be left at the

6   home of the person to be served in the presence of a

7   competent member of the household, and copies of the

8   documents must thereafter be mailed to the person to be

9   served.  Id.  For corporations, the person to be served

10  includes a person designated as agent for service of

11  process.  Id. § 416.10.  Plaintiff served a designated

12  agent of Defendant Orange Walker on March 17, 2021, and

13  thereafter mailed the documents to the person to be

14  served.  See Proof of Service, ECF No. 15.  Thus,

15  Plaintiff properly served Defendant Orange Walker and

16  provided the necessary proof of service.

17      3.  Local Rule 55-1

18      Plaintiff has satisfied the procedural requirements

19  for default judgment under Local Rule 55-1.  Plaintiff's

20  counsel submitted a declaration in support of the

21  instant Application, which stated that default was

22  entered against Defendant Orange Walker and Defendant

23  Yong Jae Kwak on May 4, 2021, and March 12, 2021,

24  respectively, for failure to respond to the Complaint.

25  Decl. of Faythe Gutierrez in Supp. of Pl.'s App. ¶ 5,

26  ECF No. 19-11.  The declaration further states that

27  neither defendant is an infant, incompetent person, or

28  exempted under the Soldiers' and Sailors' Civil Relief

1   Act of 1940.  Id. ¶ 2.  It also verifies that notice of
2   the Application was served on both Defendants on August
3   2, 2021.  Id. ¶ 6.

4       4.  *Eitel* Factors

5       Here, Plaintiff's Application fails because of the
6   second and third Eitel factors, which require the Court
7   to consider the sufficiency of the Complaint and the
8   merits of the claim.  Eitel, 782 F.2d at 1471 (citation
9   omitted).  At this stage, the Court concludes that the
10  Complaint does not support granting default judgment.

11      To prevail under the ADA, a plaintiff must
12  establish that "(1) she is disabled within the meaning
13  of the ADA; (2) the defendant . . . owns, leases, or
14  operates a place of public accommodation; and (3) the
15  plaintiff was denied public accommodations by the
16  defendant because of her disability."  Molski v. M.J.
17  Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007) (citing
18  42 U.S.C. § 2182(a)-(b)).

19      According to the ADA, a disability is "a physical
20  or mental impairment that substantially limits one or
21  more major life activities," including walking.  42
22  U.S.C. § 12102.  Plaintiff is paralyzed from the waist
23  down and requires a wheelchair for mobility.  Compl.
24  ¶ 1; Pl.'s Decl. ¶ 2, ECF No. 19-4.  Therefore,
25  Plaintiff is disabled.  Further, Plaintiff alleges that
26  the Business is a place of public accommodation.  Compl.
27  ¶ 11.  Plaintiff has therefore established the first two
28  elements of his ADA claim for purposes of

1   discrimination.

2        Plaintiff must also establish that Defendants

3   discriminated against him because of his disability.

4   Under the ADA, discrimination includes the "failure

5   to remove architectural barriers . . . where such

6   removal is readily achievable . . . ."  42 U.S.C.

7   § 12182(b)(2)(A)(iv).  The Americans with Disabilities

8   Act Accessibility Guidelines ("ADAAG") establish the

9   technical standards for determining whether a barrier

10  exists.  Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d

11  1075, 1080-81 (9th Cir. 2004).

12       The ADA requires that the clear width of walking

13  surfaces be 36 inches minimum.  36 C.F.R. § Pt. 1191,

14  App. D § 403.5.1.  Here, Plaintiff alleges that some of

15  the paths of travel inside the Business have widths that

16  are well below 36 inches.  See Compl. ¶¶ 13-14.  Walking

17  paths that are not wide enough for wheelchairs present

18  architectural barriers that are subject to the ADA.

19  Chapman v. Pier 1 Imps. (U.S.), Inc., 779 F.3d 1001,

20  1005 (9th Cir. 2015).

21       The next issue is whether removal of these barriers

22  is readily achievable.  The Ninth Circuit has recently

23  adopted a burden-shifting scheme, which places the

24  initial burden on the plaintiff to "plausibly show how

25  the cost of removing the architectural barrier at issue

26  does not exceed the benefits under the circumstances."

27  Lopez v. Catalina Channel Express, Inc., 974 F.3d 1030,

28  1038 (9th Cir. 2020).  Once "the plaintiff makes a

1  plausible showing that the requested accommodation is
2  readily achievable, the burden shifts to the defendant
3  to counter the plaintiff's initial showing." Id. at
4  1038-39. "Although Lopez was decided at the summary
5  judgment stage, courts in this circuit have applied the
6  same framework where plaintiffs seek default judgment."
7  Burke v. G-B-F Stanton, No. 8:20-cv-01044-JLS-KES, 2021
8  WL 3207959, at *4 (C.D. Cal March 3, 2021).

9      Here, Plaintiff alleges that the barriers at issue
10  "are easily removed without much difficulty or
11  expense." Compl. ¶ 21. Moreover, Plaintiff claims
12  that "there are numerous alternative accommodations
13  that could be made to provide a greater level of access
14  if complete removal were not achievable." Id. These
15  conclusory statements are insufficient to meet
16  Plaintiff's burden under Lopez. Neither the Complaint
17  nor the Application contain cost estimates for removal
18  or any explanation as to how such costs would not exceed
19  the benefits of removing the barrier. Compare Bouyer v.
20  Ban Pan Corp., No. CV 20-11540-MWF (PDx), 2021 WL
21  2791623 (C.D. Cal. April 5, 2021) (denying motion for
22  default judgment because plaintiff failed to allege how
23  the costs of repairing curb ramp and aisle surface next
24  to accessible parking space would not exceed the benefit
25  of such repairs), with Hull v. RA2 L.A.-Brea LP, No.
26  2:21-cv-00910-MCS-MAA, 2021 WL 3772401 (C.D. Cal. August
27  25, 2021) (finding that plaintiff met his burden by
28  submitting a Site Accessibility Evaluation providing

recommendations for removing barriers and a declaration containing cost estimates for doing so).  While plaintiffs need not provide "precise cost estimates" or "a specific design" for the proposed accommodation, <u>Lopez</u>, 974 F.3d at 1038, Plaintiff has supplied the Court with no information regarding the nature of the non-compliant paths of travel or the changes that would be necessary to widen those paths.[3]

Plaintiff has failed to meet his burden to plausibly show how the cost of removing the barriers at issue does not exceed the benefit.  Accordingly, the Court **DENIES without prejudice** Plaintiff's Application. Plaintiff must file a renewed application for default judgment no later than October 13, 2021, which provides evidence that the cost of removing the barriers at issue does not exceed the benefits under the circumstances. Plaintiff does not have to file an amended complaint. Because this factor alone makes granting default judgment inappropriate, the Court need not address the

_____

[3] Plaintiff provided photographs of the Business as an exhibit to his Application, but they are unhelpful in determining which pathways are too narrow and how they can be widened to comply with the ADA.  <u>See</u> Photographs, ECF No. 19-6.  Plaintiff additionally asserts that the barriers at issue are "identified by the Department of Justice as presumably readily achievable to remove."  Compl. ¶ 21.  Indeed, the federal regulations list examples of barriers that are presumably readily achievable to remove, such as "widening doors" and "rearranging tables, chairs, vending machines, display racks, and other furniture."  <u>See generally</u> 28 C.F.R. § 36.304(b).  But Plaintiff fails to explain how taking any action enumerated in that regulation would bring the Business into compliance.  Without more information, Plaintiff fails to meet his initial burden under <u>Lopez</u>.

1 | other <u>Eitel</u> factors.

2 | **III.   CONCLUSION**

3 | The Court **DECLINES** to exercise supplemental

4 | jurisdiction over Plaintiff's Unruh Act claim and

5 | thereby **DISMISSES** the claim **without prejudice.**  The

6 | Court **DENIES** Plaintiff's Application as to the ADA claim

7 | **without prejudice,** and Plaintiff shall file a renewed

8 | motion that explains why the barriers at issue are

9 | readily achievable to be removed.

10 | Plaintiff is advised that the failure to file a

11 | renewed application for default judgment by the deadline

12 | set forth above, or filing one that otherwise fails to

13 | address the requirements set forth in this Order, shall

14 | result in the renewed application being denied and/or

15 | the action against defendants being dismissed for

16 | failure to prosecute and/or to comply with a court

17 | order.  <u>See</u> Fed. R. Civ. P. 41(b); <u>Link v. Wabash R.R.</u>

18 | <u>Co.</u>, 370 U.S. 626, 629-30 (1962).

19 |

20 | **IT IS SO ORDERED.**

21 |

22 | DATED: September 28, 2021 _____
/s/ Ronald S.W. Lew

23 | **HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge

24 |

25 |

26 |

27 |

28 |

17